Filed 6/13/14  P. v. Dominguez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JAVIER EFREN DOMINGUEZ,<br><br>    Defendant and Appellant. | G049841<br><br>(Super. Ct. No. SWF027470)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Kelly L. Hansen, Judge.  Affirmed in part, reversed in part, and remanded.

Torres & Torres, Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Over an 18-year span, defendant Javier Efren Dominguez engaged in sexual misconduct with nine nieces and step nieces. A jury convicted defendant of 24 counts of lewd conduct upon a child under the age of 14 (Pen. Code, § 288, subd. (a); all further statutory references are to this code) and one count of possession of child pornography (§ 311.11, subd. (a)). The jury also found defendant committed the crimes against more than one victim (former § 667.61, subd. (e)(5), now § 667.61, subd. (e)(4)). The court sentenced defendant to consecutive 15-years-to-life terms for each of the 24 lewd conduct counts and a concurrent one year and four months term on the child pornography count.

Defendant contends the court erred in failing to give sua sponte CALCRIM No. 1193, by instructing the jury with CALCRIM No. 226, and in failing to instruct the jury that the acts supporting three of the lewd conduct counts needed to have occurred after November 30, 1994. He also contends his sentence on nine of the lewd conduct counts (counts 13 through 21) must be reversed because the acts occurred before the enactment of section 667.61 and that the statute of limitations had run on these counts. Finally, he claims the court failed to recognize he was eligible for probation and misunderstood its discretion under section 667.61 with respect to consecutive and concurrent sentencing. The Attorney General concedes and we agree that the sentences imposed on counts 13 through 21 violate the ex post facto clause and the prosecution of these counts was barred by the statute of limitations. We also conclude the trial court expressed a misunderstanding of its discretion with respect to defendant's eligibility for probation. We reject the remainder of defendant's contentions and remand the case to the trial court for resentencing.

To the extent the facts are relevant to our discussion of defendant's appellate contentions, they will be noted there.

DISCUSSION

*1. The Failure to Instruct With CALCRIM No. 1193*

Defendant contends the trial court erred in failing to instruct in the language of CALCRIM No. 1193. Sergeant Jeff Dill qualified as an expert witness who testified to the child sexual abuse accommodation syndrome. His only testimony on this issue was that, based on his extensive experience, there would be a delay in reporting child sexual abuse in the majority of cases. The remainder of his testimony was confined to the evidence obtained in connection with the child pornography count. CALCRIM No. 1193 cautions the jury that a witness's "testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him." The instruction was not requested and the issue is whether the court had a sua sponte duty to so instruct.

Cases are split on this issue. *People v. Housley* (1992) 6 Cal.App.4th 947 held the court has such a duty. There the victim had recanted the abuse occurred when testifying and a psychologist testified that such recantation was not uncommon particularly where the victim was subjected to intra-family abuse. The court held, "We thus conclude that because of the potential for misuse of CSAAS evidence, and the potential for great prejudice to the defendant in the event such evidence is misused, it is appropriate to impose upon the courts a duty to render a sua sponte instruction limiting the use of such evidence. Accordingly, in all cases in which an expert is called to testify regarding CSAAS we hold the jury must sua sponte be instructed that (1) such evidence is admissible solely for the purpose of showing the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested; and (2) the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true." (*Id.* at pp. 958-959.) *People v. Bowker* (1988) 203 Cal.App.3d 385, 394 is to the same effect.

*People v. Stark* (1989) 213 Cal.App.3d 107, 116, *People v. Sanchez* (1989) 208 Cal.App.3d 721, 735, and *People v. Bothuel* (1988) 205 Cal.App.3d 581, 587-588 (overruled on other grounds in *People v. Scott* (1994) 9 Cal.4th 331, 347) all held the instruction must only be given "if requested."

Even if the law requires the instruction be given, the failure to give the instruction here was harmless. It is not reasonably probable a more favorable result would have been obtained by defendant if the instruction had been given. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Housley, supra,* 6 Cal.App.4th at p. 959.) Although Dill did interview the victims, his brief testimony regarding delayed reporting in more than 50 percent of the cases did not refer to the specific victims here. Contrary to defendant's contention, nothing in his testimony suggests he presupposed that these victims had been molested or that he, by implication, vouched for the truthfulness of their testimony.

Also, as the Attorney General points out, the evidence of defendant's guilt was very strong. Nine girls presented detailed descriptions of defendant's conduct with each of them. Only two of them had previously discussed the abuse with each other. Yet the pattern of the abuse was similar. Almost all the abuse occurred when the girls were younger than 13.

### 2. The CALCRIM No. 226 Instruction

Defendant complains the court erred by reading the last paragraph of CALCRIM No. 226, the standard instruction dealing with credibility of witnesses which reads: "If you decide that a witness deliberately lied about something significant in this case, you should consider not believing anything that witness says. Or, if you think the witness lied about some things, but told the truth about others, you may simply accept the part that you think is true and ignore the rest." In light of defendant's position that each of the nine victims lied in describing the abuse, the quoted portion of the instruction

4

seems eminently appropriate. But because defendant also testified, denying all allegations, he claims the instruction was prejudicial to him.

Defendant's objection is two-fold. He claims the word "should" in the first sentence should have been "may," the word used in CALJIC No. 2.21.2. He also claims, "The second error is in the second sentence. It creates a new problem separate from CALJIC No. 2.21.2, in that it short-circuits the ongoing contrasting and comparing of various sources of evidence in which a jury should engage before reaching its ultimate conclusions about the facts and instead urges an early discarding of some portions of the evidence in the case."

We reject defendant's objections.

Contrary to defendant's reading of CALCRIM No. 226, the court did not state the jury "should not believe the witness," but rather, the jury "should consider not believing the witness." The sentence does not instruct the jury to disbelieve a witness whom they conclude deliberately lied about something, but merely that this is something for the jury to consider. The difference between "should consider" and "may" does not raise a significant distinction. As both parties acknowledge, in *People v. Warner* (2008) 166 Cal.App.4th 653, the court also rejected this argument. (*Id.* at pp. 656-659.)

As to the second objection, as both parties point out, in *People v. Beardslee* (1991) 53 Cal.3d 68 and *People v. Lang* (1989) 49 Cal.3d 991, the Supreme Court rejected this same argument with respect to similar language in the predecessor instruction contained in CALJIC No. 2.21.2. (*People v. Beardslee, supra,* 53 Cal.3d at pp. 94-95; *People v. Lang, supra,* 49 Cal.3d at pp. 1023-1024.) We have no basis for disagreement with those decisions.

*3. Counts 13 Through 21*

Counts 13 through 21 charged defendant with molestations for years, ending in January 1994. These charges were made under the one strike law, as having

been committed in violation of section 667.61. But that section of the Penal Code did not become effective until November 30, 1994. Defendant contends and the Attorney General agrees the prohibition against ex post facto application of the law requires reversal of the sentence as to these counts.

Furthermore, in 1994, the statute of limitations for violations of section 288, subdivision (a) was six years (§ 800). Defendant contends, and again the Attorney General agrees, prosecution on counts 13 through 21 was therefore barred by the statute of limitations and these charges must be dismissed.

*4. Counts 10 Through 12*

In counts 10 through 12, defendant was charged with having molested one of his victims between June 1994 and July 1997. As previously noted, if the molestations were limited to having occurred between June 1994 and November 30, 1994, the prosecution would have been barred by the statute of limitations. The jury was not instructed to limit its consideration to acts of molestation occurring after November 30, 1994.

These charges dealt with molestation of the victim identified as JD4, who was 25 at the time she testified. JD4 testified defendant molested her quite frequently, at least 20 times, primarily between the time she was 7 and 11 years old. She stated defendant touched her often until 1997. The first time was in 1994, during a trip to visit a cousin in prison at Folsom. Later she stated, defendant touched her when she was in bed so frequently that "[i]t seemed like every day . . . from about '95 to about . . . 1997." When she was nine, there was an incident when defendant exposed himself and asked her to turn around. The last incident was in about 2003, when the witness was about 16; the family was in a hotel in Las Vegas and defendant crept into her room and squeezed her buttocks.

6

Because of the statute of limitations, the court should have instructed the jury, they could only consider incidents occurring after November 30, 1994. We review this error de novo to determine if the error was harmless. (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct.824, 17 L.Ed.2d 705].) Was the error harmless beyond a reasonable doubt? We conclude it was. In light of the evidence of the numerous molestations after November 30, 1994, there is no reasonable doubt the jury would have found defendant guilty of these charges even if it had been properly instructed it could only consider evidence of molestation after that date.

Also, the Attorney General points out, the prosecutor argued that the first act of molestation, which occurred before November 30, 1994, could not be considered because it took place out of the county, in the Folsom prison parking lot. And the court similarly instructed the jury. The prosecutor argued the first act of molestation to be considered was the time defendant exposed his penis to JD4. At that time JD4 was about nine years old. This would, at the earliest have taken place in 1995. It is of note that defendant's reply brief makes no attempt to contradict this analysis by the Attorney General.

In support of his argument relating to counts 10 through 12, defendant relies primarily on *People v. Hiscox* (2006) 136 Cal.App.4th 253 where the court stated, "Since the jury was not asked to make finding on the time frame within which the offenses were committed, the verdict cannot be deemed sufficient to establish the date of the offenses unless the evidence leaves no reasonable doubt that the underlying charges pertained to events occurring on or after November 30, 1994." (*Id.* at p. 261.) But here, as pointed out in the preceding paragraph, the prosecutor's statements to the jury and the court's instruction relating to the 1994 incident, distinguish the *Hiscox* case and permits us to conclude there is no reasonable doubt the jury would have found defendant guilty of these charges even if it had been properly instructed.

7

## 5. Discretion to Impose Concurrent Sentences

Defendant contends the trial court misunderstood its discretion to impose concurrent rather than consecutive sentences under section 667.61. This misstates the record. The court stated, "I did have some initial concern about running all the counts consecutive versus concurrent. I did go back through my notes and to assure myself . . . that there was evidence of different occasions and not merely different touchings of the same victim during the same occasion. In those situation, I would have run some counts concurrent, but in this case, because of the number of counts of crimes committed against the various victims and on separate dates and separate locations, I do find that the defendant, on each count, did have an opportunity to reflect . . . ."

The court did consider and rejected its power to run the sentences concurrently.

## 6. Defendant's Eligibility for Probation

Both sides agree that until 2006, during the period when defendant committed his crimes, section 1203.066 provided that a defendant convicted of violating section 288, would have been eligible for probation, even when there were multiple victims if he is a relative of the victims and resided in the same household. This condition was present. The statute contains additional conditions the court must find true before granting probation. Here the court found defendant ineligible for probation and therefore never determined whether the appropriate conditions were met. When resentencing defendant, the trial court shall determine whether the appropriate conditions have been met and, if so, consider whether to impose probation.

DISPOSITION

The conviction on counts 13 through 21 is reversed. The conviction on the remaining counts is affirmed. The case is remanded to the trial court to resentence defendant. When resentencing defendant, the court shall also determine whether defendant is eligible for probation.


RYLAARSDAM, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.

9